***NOT FOR PUBLICATION***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MATTHEW SCHMITT, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>NEWELL BRANDS INC. and GRACO CHILDREN'S PRODUCTS INC.,<br><br>　　　　　Defendants. | Civil Action No. 20-16240 (ZNQ) (RLS)<br><br>OPINION |

**QURAISHI, District Judge:**

Plaintiff Matthew Schmitt ("Plaintiff") filed this putative class action on behalf of himself and all others similarly situated against Defendants Newell Brands Inc. ("Newell") and Graco Children's Products Inc. ("Graco") (collectively, "Defendants") for alleged violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. 56:8-1 *et seq.*; negligent misrepresentation; fraud; and unjust enrichment. (ECF No. 10 ("FAC")). Before the Court is Defendants' motion to dismiss the First Amended Complaint ("FAC") for lack of subject-matter jurisdiction and failure to state a claim for relief. (ECF No. 12 ("Defs. Mov. Br.")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, Defendants' motion is **GRANTED**.

**I.　FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The relevant facts are derived from the FAC and assumed true for the purposes of this motion.

Defendants are a leading manufacturer of car seats for children of all ages, including, but not limited to, infant car seats, convertible car seats, child safety seats, and booster seats. (FAC ¶ 9). On August 31, 2020, Plaintiff purchased the "SlimFit™ Platinum 3-in-1 Car Seat," manufactured by Defendants, from www.gracobaby.com for $226.57. (*Id.* ¶ 12). According to Plaintiff, the car seat's product manual orders the consumer to "STOP using this car seat and throw it away 10 years after the date of manufacture," and further that Graco's website explains that its "[c]ar seats can be used safely only for a defined period of time, typically 7 to 10 years." (*Id.* ¶¶ 15-16). When the car seat arrived, however, it purportedly had a sticker affixed to the seat that indicated it had been manufactured on March 7, 2019. (*Id.* ¶ 13). Thus, Plaintiff alleges that the car seat he purchased was "nearly one-and-a-half years old by the time it arrived," and that the useful life of the car seat had depreciated by 15%. (*Id.* ¶ 14). In this regard, Plaintiff asserts that he purchased the car seat "intending to use it for ten years, not only for his current child, but with hopes of utilizing it for future children as well." (*Id.* ¶ 19). According to Plaintiff, had he known that the car seat was "substantially expired," he would not have purchased the product, and therefore, Defendants' unconscionable commercial practices, deceptions, fraud, and misrepresentations caused Plaintiff and "thousands of other consumers in New Jersey and throughout the United States" financial injury. (*Id.* ¶¶ 23, 27).

On February 1, 2021, Plaintiff filed an Amended Complaint, asserting five causes of action: (1) violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. 56:8-1 *et seq.*; (2) negligent misrepresentation; (3) fraud; (4) unjust enrichment; and (5) "money had and received." (*See generally*, FAC). Plaintiff seeks economic damages on behalf of himself and purchasers like him, "representing the difference in value between a new car seat with a discrete amount of useful life (i.e., what was promised) and a car seat with a substantially reduced life (i.e.,

what was received)." (*Id.*)  Plaintiff also seeks injunctive relief prohibiting Defendants from engaging in this practice and requiring them to provide purchasers with accurate statements regarding the car seat purchased. (*Id.*)

## II. <u>LEGAL STANDARDS</u>

### A. Rule 12(b)(1)

Standing under Article III of the United States Constitution is an element of subject matter jurisdiction. *See Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 269 (3d Cir. 2016). Under Rule 12(b)(1), "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

When considering a Rule 12(b)(1) standing challenge, the Court must determine whether the attack is facial or factual. *Schering Plough*, 678 F.3d at 243. "A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because . . . it does not present a question of federal law, or because . . . some other jurisdictional defect is present." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). When reviewing a facial attack, a "court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elec. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Although the plaintiff bringing an action in federal court bears the burden of establishing jurisdiction, upon reviewing a facial attack, a "court must consider the allegations of

3

the complaint as true." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

Factual attacks, in contrast, argue that subject matter jurisdiction is improper "because the facts of the case . . . do not support the asserted jurisdiction." *Aichele*, 757 F.3d at 358. The presumption of truth does not extend to factual attacks, "and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891. Courts are permitted, however, to weigh and consider facts "outside the pleadings" to decide whether subject matter jurisdiction is proper. *Aichele*, 757 F.3d at 358.

B.  **Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); *Haney v. USA Gymnastics, Inc.*, No. 21-07213, 2022 WL 909871, at *2 (D.N.J. Mar. 29, 2022). When reviewing a motion to dismiss for failure to state a claim, courts first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). While Federal Rule of Civil Procedure 8(a)(2) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level,

4

so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

### III.  DISCUSSION

#### A.  Standing

Before addressing the merits of a dispute, a court must determine whether it has subject-matter jurisdiction over the case before it. *See Hollingsworth v. Perry*, 570 U.S. 693, 704–05 (2013). Article III of the U.S. Constitution limits the judicial power of federal courts to deciding "cases" or "controversies." § 2. This limitation serves the purpose of "prevent[ing] the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty*, 568 U.S. 398, 408 (2013) (citations omitted). There are three elements that Plaintiff must meet to satisfy Article III standing. First, there must be an "injury in fact," or an "invasion of a legally protected interest" that is "concrete and particularized." *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017) (alteration in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Concreteness is determined by whether the asserted harm has a "close relationship" to a harm traditionally recognized as providing a basis for a lawsuit in American courts. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). Some intangible harms may also qualify as sufficiently concrete, such as reputational harms, invasions of privacy, and infringements of fundamental rights. *Id.* Second, there must be a "causal connection between the injury and the conduct

complained of[.]" *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017). Third, there must be a likelihood "that the injury will be redressed by a favorable decision." *Id.* In the class action context, at least one named plaintiff must satisfy all these requirements. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). Absent standing, there is no case or controversy, and a federal court cannot exercise subject-matter jurisdiction over the plaintiff's claims. Courts have an independent obligation to assess whether standing exists. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12 (h)(3).[1]

Here, Defendants contend that Plaintiff lacks standing in two ways: (1) that Plaintiff fails to allege an injury-in-fact, and (2) that any claim of standing based on future potential injury also fails because such injuries are vague and speculative. (Defs. Mov. Br., 15-17). According to Defendants, Plaintiff has not alleged any defect with the car seat or that it has manifested any problems whatsoever. (*Id.* at 3). Rather, Defendants claim that Plaintiff has "concocted speculative, non-concrete damages that do not exist now concerning a product that can be used until 2029." (*Id.*) Further, Defendants argue that Plaintiff lacks standing for the injunctive relief he seeks because the Amended Complaint "fails to allege with any plausible certainty that Plaintiff intends to purchase another Graco car seat in the future." (*Id.*) Notably, Plaintiff does not allege

---

[1] "In the context of a putative class action lawsuit, '[t]he standing inquiry does not change.' " *In re Mercedes-Benz Emissions Litig.*, No. 16-881, 2016 WL 7106020, at *3 (D.N.J. Dec. 5, 2016) (quoting *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d. 451, 461 (D.N.J. 2005)). In other words, "a predicate to [a plaintiff's] right to represent a class is [her] eligibility to sue in [her] own right. What [she] may not achieve [herself], [she] may not accomplish as a representative of a class." *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 734 (3d Cir. 1970). Indeed, "if none of the named plaintiffs purporting to represent a class establishes the requisite case or controversy with the defendants, none may seek relief on behalf of [herself] or any other member of the class." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 361 (3d Cir. 2013) (quoting *O'Shea*, 414 U.S. at 494).

physical injury.[2] Instead, Plaintiff argues an economic theory of harm and future injury. In that regard, Plaintiff argues that the injury alleged is straightforward—the car seat he purchased arrived without a significant portion of its useful life and, had he been aware of such a fact, he either would not have purchased the car seat through Defendants' website or would have paid substantially less. (Pl. Opp., 6-7). According to Plaintiff, this is a "standard benefit-of-the-bargain injury for overpayment, something that has long been recognized as the type of concrete and particularized injury which confers standing." (*Id.* at 7).

### 1. Monetary Damages

"[T]he Supreme Court has repeatedly recognized that financial or economic interests are 'legally protected interests' for purposes of the standing doctrine." *Cottrell v. Alcon Laboratories*, 874 F.3d 154, 164 (3d Cir. 2017) (citations omitted). However, if plaintiffs allege "an economic injury as a result of a purchasing decision," they "must do more than simply characterize that purchasing decision as an economic injury [and] must instead allege facts that would permit a factfinder to determine, without relying on mere conjecture, that . . . plaintiff[s] failed to receive the economic benefit of [their] bargain[s]." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278, 281 (3d Cir. 2018). In other words, under the "benefit of the bargain" theory, a plaintiff can allege facts to show that he bargained for a product at a certain value but received a product worth less than that value, allowing the court to calculate the difference in value between what was bargained for and what was received. *Id.* at 283. Likewise, in *Koronthaly v. L'Oreal USA, Inc.*, the Third Circuit concluded that "[a]bsent any allegation that [the plaintiff] received a product that failed to work for its intended purpose *or was*

---

[2] Because neither Plaintiff nor his daughter allege any physical harm from using the car seat, he cannot premise standing on a theory of physical injury. To that end, it is well established that "[f]ear and apprehension about a possible future physical or medical consequence . . . is not enough to establish an injury in fact." *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 636 (3d Cir. 1996) (Wellford, J., concurring).

*worth objectively less than what one could reasonably expect*," the plaintiff has not demonstrated a concrete injury-in-fact. 374 F. App'x 257, 258 (3d Cir. 2010) (emphasis added).

At the outset, the Court finds it helpful to provide a survey of relevant case law from this district to provide insight regarding this nuanced, and lesser-used basis for establishing standing.

First, in *Koronthaly*, the Third Circuit affirmed the district court's dismissal for lack of standing in a case where the plaintiff purchased lipstick that contained lead. The lead was not disclosed on the packaging or the product, and the plaintiff claimed she would not have purchased the lipstick had she known about the lead. 374 F. App'x at 257. In affirming that the plaintiff lacked standing, the Third Circuit found it significant that the plaintiff conceded she suffered no adverse health consequences from using the lipstick. The appellate court also found that her subjective allegation that trace amounts of lead in the lipstick were unacceptable to her was not an injury-in-fact. *Id.* at 259. Further, to the extent the plaintiff claimed that the injury-in-fact was the loss of the "benefit of the bargain," the Third Circuit explained that she wrongly relied on contract law. *Id.* Because the plaintiff's lipstick purchases were not made pursuant to a contract, she could not have been denied the benefit of any bargain. *Id.* The Third Circuit concluded that "[a]bsent any allegation that [the plaintiff] received a product that failed to work for its intended purpose *or was worth objectively less than what one could reasonably expect*, [she] has not demonstrated a concrete injury-in-fact." *Id.* (emphasis added).

In *Young v. Johnson & Johnson*, No. 11-4580, 2012 WL 1372286 (D.N.J. Apr. 19, 2012), this Court determined that the plaintiff lacked standing in a case involving the alleged misrepresentation of the nutritional content and health benefits of Benecol, a butter/margarine substitute. The Court found that the plaintiff did not sufficiently plead an injury-in-fact because he merely alleged that he purchased Benecol fairly regularly during a five-year period, but he did

not allege that he actually consumed it or that he suffered any adverse health effects from it. *Id.* at *3. In addition, the Court rejected the plaintiff's position that he received an inferior product, such that he satisfied the injury-in-fact requirement, because he believed Benecol was healthy, when in fact it was not. *Id.* at *4. In finding no economic injury, the Court explained that the plaintiff's purchases of Benecol were not made pursuant to a contract and he did not allege how he paid a premium for it or received a product that did not deliver the advertised benefits. *Id.* (citing *Koronthaly*, 374 F. App'x at 259).

Next, in both *James v. Johnson & Johnson Consumer Cos., Inc.*, No. 10-03049, 2011 WL 198026 (D.N.J. Jan. 20, 2011) and *Medley v. Johnson & Johnson Consumer Cos., Inc.*, No. 10-02291, 2011 WL 159674 (D.N.J. Jan. 18, 2011), this Court found that the plaintiffs could not clear the threshold requirement for showing an economic injury. These cases involved ten plaintiffs who alleged the defendants violated the FDA's ban on methyl chloride in cosmetic products because its baby shampoo contained that substance. The plaintiffs claimed economic injury based on the price they paid for the shampoo, which the Court noted they used in bathing their children without adverse health reactions. *Medley*, No. 10-02291, 2011 WL 159674, at *2. This Court accepted, as true, the plaintiffs' allegation that had they known the true nature of the baby shampoo, they would not have purchased it or allowed their children to be exposed to it. Nonetheless, however, the Court determined that economic damages did not result as a consequence. *Id.* In this regard, this Court concluded that once the shampoo had been used, there was no economic injury for the plaintiffs to complain of and the fear of future injury is insufficient to confer standing. *Id.* This Court reasoned that the plaintiffs received the benefit of their bargain so long as there were no adverse health effects and the shampoo worked as intended, *i.e.*, that it

9

cleansed the children's hair without irritation. As such, this Court found that the plaintiffs did not demonstrate that they suffered an injury-in-fact.

Next, in *Finkelman v. National Football League*, 810 F.3d 187 (3d Cir. 2016) and *Cottrell*, the Third Circuit explored the contours of conclusory or conjectural assertions of economic injury. Indeed, the Third Circuit noted "[t]hese precedential opinions represent two sides of the same coin" because they both involved whether a plaintiff's theory of economic injury was too speculative to establish standing. *In re Johnson & Johnson*, 903 F.3d at 285.

*Finkelman* involved a consumer fraud class action against the National Football League ("NFL") related to ticketing practices for Super Bowl XLVIII, which allegedly violated New Jersey law. 810 F.3d at 188. Prior to the Super Bowl, the NFL withheld almost all tickets for the game—99%—from the general public for league insiders and offered the remaining 1% to winners of a lottery that all could enter. *Id.* at 190. One named plaintiff, Josh Finkelman, did not enter the lottery, but instead bought two tickets on a secondary, resale market for $2,000 per ticket even though they each had a face value of $800. *Id.* He brought a class action on behalf of all persons who paid for tickets in excess of their printed price and alleged they "suffered ascertainable losses consisting of the purchase price of the ticket in excess of the face value." *Id.* at 197. The Third Circuit construed this claim as asserting two possible theories of injury in fact but rejected both. *Id.* at 197–203. The second theory was a basic application of supply and demand—had the NFL not wrongfully withheld tickets, the price of Finkelman's ticket on the resale market would have been cheaper. *Id.* at 199. The appellate court found this theory speculative because league insiders had the same incentive to resell their tickets on the secondary market as the unnamed broker who sold his tickets to Finkelman. *Id.* at 200. Thus, it was just as likely that the NFL's ticket withholding practice actually increased the number of ticket sellers in the secondary market, and

10

consequently decreased the price. *Id.* Accordingly, the Third Circuit concluded Finkelman did not have standing because his allegation that he paid more for his tickets than he would have absent the NFL's alleged misconduct was a " 'bald assertion' unsupported by well-pleaded facts." *Id.* at 202.

While the problem with the plaintiff's economic theory in *Finkelman* was that it relied on a speculative inference, that problem was not present in *Cottrell v. Alcon Laboratories*, 874 F.3d 154, 164 (3d Cir. 2017). There, consumers of a prescription eye medication brought a class action against the manufacturer alleging it intentionally designed the tip of the bottle dropper to be larger than normal in order to increase the products' drop size and thereby deplete the medication more rapidly. 874 F.3d at 160. The plaintiffs alleged they suffered economic injury because if the drop size was smaller, the medicine would last longer, and they would spend less on the medication over time. *Id.* The plaintiffs attempted to measure their financial harm under two theories. Relevant here, the first theory sought to measure their financial harm by taking the difference in cost between what they would have paid for smaller tipped bottles and what they actually paid for the larger tipped bottles. *Id.* They supported this cost saving allegation through scientific studies which showed how smaller tipped bottles would reduce the number of bottles needed for a one-year therapy regime. *Id.* This Court rejected this theory as being too speculative because it purportedly relied on the presumption that the manufacturers priced their products on volume. *Id.* The Third Circuit found, however, that the pricing theory was not based on this presumption, but rather alleged that smaller tipped bottles would lower the cost of a medication treatment regime by allowing consumers to extract more doses out of the same bottle. *Id.* Thus, because the plaintiffs' theory was based solely on a reduction in the size of the bottle dropper tip, there was no unsupported leap like the one required in *Finkelman*. *Id.* at 169.

Finally, in *In re Johnson & Johnson*, the plaintiff accused the defendants of engaging in unfair and illegal business practices by manufacturing, marketing, and distributing baby powder products without informing consumers that its use may lead to an increased risk of developing ovarian cancer. 903 F.3d at 281. The plaintiff's theory was that she suffered an economic injury by purchasing improperly marketed Baby Powder. *Id.* at 282. Specifically, she alleged that had she been properly informed that using Baby Powder could lead to an increased risk in developing cancer, she would not have purchased the powder in the first instance. *Id.* This Court concluded she received the benefit of her bargain and therefore did not suffer an injury in fact because the Baby Powder functioned as intended. *Id.* at 283. On appeal, the plaintiff argued that she did not receive the benefit of her bargain because she was promised Baby Powder that was safe but received a product that was not. *Id.* The Third Circuit explained that to successfully plead an economic injury under the benefit of the bargain theory a plaintiff must allege that she bargained for a product worth a given value but received a product worth less than that value. *Id.* at 283. Nor would it be enough for a plaintiff to pair a "conclusory assertion of money lost with a request that a defendant pay up." *Id.* at 288. Because the plaintiff simply alleged that had she known using Baby Powder could lead to increased risk of cancer, she would not have purchased it, and did not allege the Baby Powder provided her with an economic benefit worth less than what she paid, she did not have Article III standing. *Id.* at 288–90. Her allegation that the Baby Powder was unsafe was equally insufficient because she never alleged that she developed cancer or was at risk of developing it. *Id.* at 289.

With these guiding principles in mind, the Court turns to the issue of standing in this case. Applying the framework identified above, the Court concludes that Plaintiff fails to establish standing for several reasons. First, as observed in *Koronthaly* and *Young*, Plaintiff's purchase of

12

the car seat does not appear to have been made pursuant to a contract, thus he could not have been denied the benefit of any bargain.[3]

Second, regardless of any lack of contract, it is undisputed that Plaintiff has not alleged any defect with the car seat, nor has he pled any facts sufficient for the Court to conclude that he would not have purchased the product at issue *but for a specific misrepresentation made by Defendants*. In that regard, while Plaintiff relies, in part, on cases recognizing standing on a benefit-of-the-bargain theory of economic harm, *see In re Mercedes-Benz Emissions Litig.*, No. 16-881, 2016 WL 7106020 (D.N.J. Dec. 6, 2016) and *In re Gerber Probiotic Sales Practices Litig.*, No. 12-835, 2013 WL 4517994 (D.N.J. Aug. 23, 2013), those cases are distinguishable. Critically, in those cases, the Court found that the plaintiffs did not receive the benefit of their bargain because either: (1) the plaintiffs received a defective product; or (2) the plaintiffs pled facts sufficient for the Court to conclude that they would not have purchased the product at issue but for a specific misrepresentation made by the defendants, *i.e.*, that the plaintiff was induced into purchasing the product by a specific misrepresentation.

As to defect, Plaintiff concedes that the car seat does not suffer from any known defect, nor was he—or his daughter—physically harmed by the car seat. (Pl. Opp. at 11) (arguing that Defendants "fundamentally misunderstand[] the nature of Plaintiff's complaint, which is not that the seats suffer from a particular defect[.]"). Although this, alone, is not fatal to Plaintiff's ability to establish standing under a benefit of the bargain theory, the Court also finds that the FAC fails

---

[3] The Court notes that in *Koronthaly* and *Young*, the lack of the contract alone was not the only reason the plaintiffs failed to establish injury-in-fact. In each case, it was the lack of privity of contract in addition to a failure to allege facts demonstrating that the product failed to work as intended or was worth less than what a reasonable consumer would expect. *Koronthaly*, 374 F. App'x at 259; *Young*, 2012 WL 1372286, at *4. The same is true, here.

13

to allege sufficient facts to support his claims that Defendants misrepresented the car seat he purchased.

As discussed above, *supra*, "[t]o allege economic harm under the benefit-of-the-bargain theory it is required that plaintiffs identify the specific misrepresentation that induced their purchase." *In re Plum Baby Food Litig.*, No. 21-02417, 2022 WL 16552786, at *7 (D.N.J. Oct. 31, 2022) (citing *Estrada v. Johnson & Johnson*, No. 16-7492, 2017 WL 2999026, at *9 (D.N.J. July 14, 2017), *aff'd sub nom. In re Johnson & Johnson*, 903 F.3d at 278). By way of example, in *In re Mercedes-Benz Emissions Litig.*, plaintiffs were induced to purchase "BlueTEC" vehicles because they were allegedly better for the environment. No. 16-881, 2016 WL 7106020, at *1. In finding that the consumers had pled an injury-in-fact sufficient to withstand a motion to dismiss, this Court emphasized that the consumers' complaint identified "precise representations" made by the defendants, which the consumers relied on in purchasing their vehicles. *Id.* at *4. Indeed, the consumers pointed to specific claims made by the defendants about this technology, such as "the world's cleanest and most advanced diesel" with "ultra-low emissions, high fuel economy and responsive performance" that emits "up to 30% lower greenhouse-gas emissions than gasoline" and that the BlueTEC vehicles "convert[ ] the nitrogen oxide emissions into harmless nitrogen and oxygen" and "reduces the nitrogen oxide in the exhaust gases by up to 90%." *Id.* at *5. This Court found that, taking those allegations as true on a motion to dismiss, the consumers had "plausibly pled that the products received did not live up to the claims made by Defendants," and thus, that they suffered an injury-in-fact. *Id.* at *4.

Here, unlike the plaintiffs in *In re Mercedes-Benz Emissions Litig.*, Plaintiff does not allege that the car seat he purchased failed to deliver the advertised benefits, nor does he allege any

14

"precise representations" made by Defendants that induced his purchase.[4]  Indeed, Plaintiff alleges only that he purchased the "SlimFit™ Platinum 3-in-1 Car Seat" on August 31, 2019;  the car seat arrived with a sticker stating that it had been manufactured on March 7, 2019; the product manual states that customers should "STOP using this car seat and throw it away 10 years after the date of manufacture;" and the Graco website states that its car seats "can be used safely only for a defined period of time, typically 7 to 10 years."  (FAC ¶¶ 12-15).  Neither the statement in the product manual nor on Graco's website is alleged to be false, deceptive, or misleading.  Although Plaintiff further alleges that "many of the products on the Graco website specifically state that they will be usable for ten years," and therefore, receipt of a car seat manufactured approximately fifteen months prior to its purchase constitutes economic injury, the only precise statement to that effect purportedly made by Defendants concerns a different car seat than the one Plaintiff purchased.  Plaintiff alleges that the Graco website advertises the 4Ever All-in-1 Convertible Car Seat as "giv[ing] you 10 years with one car seat."  (FAC ¶ 17).

With respect to the car seat purchased by Plaintiff, the FAC alleges merely, upon information and belief, that "a similar statement, if not the very same statement, was found on the Graco website for the SlimFit™ Platinum 3-in-1 Car Seat[.]" (*Id.*)  This is critical because for the

---

[4] The Court notes that while it is unclear if Plaintiff's theory of harm is also based on Defendants' alleged omissions, Plaintiff has not cited, and the Court has not been able to locate, a case recognizing injury-in-fact under the benefit-of-the-bargain theory premised on an alleged omission, except in circumstances where the plaintiff has pled that the defendant was under an affirmative obligation to disclose the omitted fact.  Compare *Koronthaly*, 374 F. App'x at 259 (finding no standing where the plaintiff alleged that defendant failed to disclose the presence of lead in the product at issue, where FDA guidelines stated that the level of lead in the product did not require a warning), and *Boysen v. Walgreen Co.*, No. 11-06262, 2012 WL 2953069, at *7 (N.D. Cal. July 19, 2012) (finding the plaintiff's allegations that he suffered economic injury as a result of the defendant's failure to disclose the presence of arsenic and lead in its products were insufficient to constitute Article III standing, where the plaintiff did not allege that defendant violated FDA guidelines), with *Brod v. Sioux Honey Ass'n, Co-op.*, 927 F. Supp. 2d 811, 820 (N.D. Cal. 2013), *aff'd*, 609 F. App'x 415 (9th Cir. 2015) (finding standing where the plaintiff alleged that the defendant violated its state law "duty to label Sue Bee Honey in a way that discloses the removal of pollen to potential consumers.").

purposes of standing, Plaintiff must personally have suffered the alleged injury.  *Spokeo*, 136 S. Ct. at 1548; *see also Lujan*, 504 U.S. at 563 ("the 'injury in fact' test requires more than an injury to a cognizable interest.  It requires that the party seeking review be himself among the injured"); *see also Sanchez-Garcia v. U.S.*, 802 F. App'x 37, 40 (3d Cir. 2020) ("[E]xcept in limited circumstances, a litigant cannot rely on the injuries of others to obtain Article III standing.").  Put simply, Plaintiff cannot establish standing based on a solitary alleged misrepresentation by Defendants that concerns an entirely different product than the one he purchased. *In re Plum Baby Food Litig.*, No. 21-02417, 2022 WL 16552786, at *7 (finding that benefit-of-the-bargain theory requires that plaintiffs "identify the specific misrepresentation that induced their purchase.") (emphasis added).

      To the extent that Plaintiff relies on *Cottrell* to support his position that he has a calculable economic injury, the Court finds that case distinguishable in several ways.  First, in *Cottrell*, the Third Circuit described the plaintiff's detailed allegations about the eye medication at issue, explaining that:

> Plaintiffs illustrated in the Amended Complaint how smaller tipped bottles would reduce the number of bottles needed for a one-year therapy regimen, and the resulting cost savings, by referencing an example in a 2008 scientific study …. Plaintiffs also supported this iteration of the pricing theory by citing to numerous other scientific studies in the Amended Complaint.

*Cottrell*, 874 F.3d at 168-69.  As found above, *supra*, the FAC fails to identify similar specific misrepresentations. Next, although Graco might represent that a product it manufactures has a ten-year useful life, Plaintiff does not allege that those representations explicitly state that the useful life is ten years for the end purchaser.  Rather, the representation alleged in the FAC merely states that the product—the 4Ever All-in-1 Convertible Car Seat—has a lifespan of ten years.  Indeed, as a practical matter of commerce, the Court reasons that buyers must appreciate that certain

16

products have a shelf life, and the manufacturing and distribution process of those products is such that some of that shelf life will inevitably be lost prior to receipt by the consumer. Finally, in that same connection, the Court notes that neither the FAC nor Plaintiff's opposition to the instant motion mentions Graco's return policy. Therefore, the Court emphasizes that nothing appears to be stopping individual plaintiffs from pursuing a return of the aged products to Graco on a case-by-case basis should the useful life of the product be substantially deteriorated.

Accordingly, the Court finds that Plaintiff lacks standing to seek monetary damages.

### 2. *Injunctive Relief*

Generally speaking, in order to have standing to seek injunctive relief, a plaintiff must establish that she is "'likely to suffer future injury' from the defendant's conduct." *McNair v. Synapse Group Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 103 (1983)). The threat of injury must be "sufficiently real and immediate," *Roe v. Operation Rescue*, 919 F.2d 857, 864 (3d Cir. 1990) (citation and internal quotation marks omitted), and, as a result of the immediacy requirement, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects," *O'Shea*, 414 U.S. at 495–96; *see Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) ("To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact'. . . ."); *Lyons*, 461 U.S. at 105 ("Lyons' standing to seek the injunction requested depended on whether he was likely to suffer future injury . . . .").

For example, in *McNair*, the Third Circuit considered whether the plaintiffs who were "former customers" of a magazine company had standing to seek injunctive relief. 672 F.3d at 215. The company offered magazine subscriptions under a "continuous service plan" in which "a customer's subscription does not expire unless and until the customer opts to cancel it." *Id.* at 216.

17

Initial subscriptions were offered at "free or greatly reduced rates" and then, once the promotional period ended, customers were charged regular rates until the subscription was cancelled. *Id.* The plaintiffs brought a putative class action to enjoin the company's alleged "deceptive business practices." *Id.* at 219. The *McNair* Court held that the plaintiffs lacked standing to seek injunctive relief because they failed to "establish[ ] any reasonable likelihood of future injury." *Id.* at 225-27. Because the plaintiffs were former customers who were already aware of the company's advertising practices, the Third Circuit concluded that any future injury they might suffer was "wholly conjectural." *Id.* at 219. The Third Circuit explained that while the plaintiffs may in the future accept an offer, "speaking generally, the law accords people the dignity of assuming that they act rationally, in light of the information they possess." *Id.* at 225. As such, the type of speculative future harm alleged did not confer standing to seek injunctive relief. *Id.*

Here, Plaintiff alleges only that he "would like to be able to purchase a Graco Car Seat in the future, but would like to be able to know what the useful life of the product he is purchasing is." (FAC ¶ 31).[5] In that regard, he further alleges that he "seeks equitable relief that would require Defendants to inform customers of the useful life of the Car Seat at the time of purchase, or shortly thereafter, so that they may decide in an informed manner whether to complete the purchase." (*Id.*) First, Plaintiff's allegation that he "would like to be able to" purchase another Graco car seat in the future is precisely the type of vague, speculative allegations of future harm that courts have routinely rejected. *Lujan*, 504 U.S. at 564 ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require."). Second, the Court draws comparisons between the present allegations and the findings by the Third Circuit in *In re Johnson*

---

[5] While Plaintiff's opposition mentions that he "has at least one more child on the way," the FAC is silent in that respect. (See Pl. Opp., 13).

*& Johnson*. There, the plaintiff sought "injunctive relief in the form of 'corrective advertising' by 'enjoining Defendants from continuing the unlawful practices' of selling Baby Powder without properly warning consumers of the alleged health risks." 903 F.3d at 292. Relying on *McNair*, the Third Circuit held that the plaintiff lacked standing to seek injunctive relief because she was not likely to suffer future injury from the defendants' conduct due to her awareness of the alleged health risks associated with the Baby Powder. *Id.* The same is true, here. The Court must "afford [ ] [Plaintiff] the dignity of assuming that []he acts rationally, and that []he will not act in such a way that []he will again suffer the same alleged 'injury.' " *See In re Johnson & Johnson*, 903 F.3d at 293. "Pleading a lack of self-restraint may elicit sympathy but it will not typically invoke the jurisdiction of a federal court." *McNair*, 672 F.3d at 225 n.13. Because his allegations reveal that he knows of Defendants' purported practices, Plaintiff's request for injunctive relief amounts to a " 'stop me before I buy again' claim" that precludes Article III standing. *In re Johnson & Johnson*, 903 F.3d at 292–93. Accordingly, the Court concludes that Plaintiff does not having standing to seek injunctive relief.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is **GRANTED**, and Plaintiff's FAC is dismissed without prejudice based on a lack of standing. Plaintiff is given leave to amend his FAC within 30 days from the date of the accompanying Order consistent with the guidance provided in this Opinion.

Dated: March 28, 2023                                              *s/ Zahid N. Quraishi*
                                                                   Zahid N. Quraishi
                                                                   United States District Judge